# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAVEL STETSKO, on behalf of himself and others similarly situated,<br><br>                    Plaintiff,<br><br>            v.<br><br>SINAI I INC. d/b/a SINAI VAN SERVICE and YEFIM PORTNOV, in his individual and professional capacity,<br><br>                    Defendants. | Case No.: 25-cv-3222<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pavel Stetsko ("Stetsko" or "Plaintiff"), by and through his attorneys, Faruqi & Faruqi, LLP, and on behalf of himself and others similarly situated, hereby alleges as follows against Defendants Sinai I Inc. d/b/a Sinai Van Service ("Sinai") and Yefim Portnov ("Portnov") (together, "Defendants"):

## NATURE OF THE CLAIMS

1.      Defendants own and operate a for-hire transportation service located in Queens, New York, that provides, *inter alia*, luxury car and ambulette transportation services throughout the five boroughs of New York City, Long Island, and New Jersey.

2.      Defendants engage in a common, willful, and deliberate policy and practice of denying Plaintiff and other similarly situated Drivers (defined *infra* at ¶ 30) spread of hours pay, and minimum and overtime wages due to a policy of time shaving, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

3.      Additionally, Defendants improperly deduct parking and traffic tickets from Drivers' wages.

4.      Defendants have also consistently failed to furnish their Drivers with Notices of Pay Rate and accurate wage statements, as required by law.

5.      Lastly, when Plaintiff complained about Defendants' policy of not providing Drivers with any meal breaks mandated by law, Defendants retaliated against him by terminating his employment.

6.      Plaintiff's claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of himself and all other similarly situated Drivers employed by Defendants at any time during the full statute of limitations period.

7.      Plaintiff's claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated Drivers employed by Defendants at any time during the full statute of limitations period.

8.      Plaintiff also brings retaliation claims individually under the NYLL.

## JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

10.      The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State law pursuant to 28 U.S.C. § 1367.

11.      Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

**A.    Plaintiff Pavel Stetsko**

12.    Stetsko is a resident of Brooklyn, New York and Defendants employed him from in or around May 2011 through on or around March 6, 2025.

13.    At all relevant times, Stetsko was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**B.    Defendant Sinai I Inc. d/b/a Sinai Van Service**

14.    Sinai I Inc. d/b/a Sinai Van Service is a domestic corporation with its principal place of business located at 1224 Brunswick Avenue, Far Rockaway, New York 11691.

15.    At all relevant times, Sinai controlled and directed the terms of employment and compensation of Plaintiff, and all others similarly situated.

16.    At all relevant times, Sinai established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiff and all others similarly situated.

17.    At all relevant times, Sinai maintained and exercised its power to hire, fire, discipline, and promote Plaintiff and all others similarly situated.

18.    At all relevant times, Sinai was an "employer" within the meaning of all applicable statutes and regulations.

19.    At all relevant times, Sinai was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

20.    Upon information and belief, at all relevant times Sinai had an annual gross volume of sales in excess of $500,000.00.

C.    **Defendant Yefim Portnov**

21.    Portnov is, upon information and belief, a resident of Queens, New York.

22.    Portnov manages, owns, and operates Sinai.

23.    At all relevant times, Portnov controlled and directed the terms of employment and compensation of Plaintiff, and all others similarly situated.

24.    At all relevant times, Portnov maintained and exercised his power to hire, fire, promote, and discipline Plaintiff and all others similarly situated.

25.    At all relevant times, Portnov maintained control, oversight, and direction of Plaintiff and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiff and all others similarly situated.

26.    At all relevant times, Portnov determined the rates and method of payments to Plaintiff and all others similarly situated.

27.    At all relevant times, Portnov was an "employer" of Plaintiff, and all others similarly situated within the meaning of all applicable statutes and regulations.

## FACTS

A.    **Background**

28.    Defendants own and operate Sinai, a for-hire transportation company in Queens, New York, doing business under the name "Sinai Van Service."

29.    Defendants specialize in, *inter alia*, luxury car and ambulette transportation services throughout the five boroughs of New York City, Long Island, and New Jersey.

30.    Defendants employ approximately 100 to 120 luxury car and ambulette drivers ("Drivers") at any given time, and own and operate approximately 100 to 150 vehicles.

31.    Defendants assign company-owned luxury vehicles or ambulettes to Drivers who use them to transport individuals to the airport or to transport elderly and/or infirm individuals to school or medical facilities such as hospitals or medical offices, throughout the five boroughs of New York City, Long Island, and New Jersey.

32.    Each morning, Defendants' dispatchers give Drivers the location of Defendants' first customer.

33.    After transporting Defendants' first customer to their destination, Defendants' dispatchers will instruct Drivers to pick up and drop off Defendants' subsequent customers, continually until Drivers' shifts are completed.

34.    At the end of their shifts, Drivers drive the company-issued vehicles home, except for approximately three to four times a year when Drivers drive their assigned vehicle to Defendants' office located at 1224 Brunswick Avenue, Far Rockaway, New York 11691 (the "Office"), to undergo maintenance and/or inspection.

35.    Defendants typically schedule Drivers to work five to six days per week, from approximately between 8:00 a.m. and 9:00 a.m. to approximately between 3:00 p.m. and 6:30 p.m., for a total of approximately 30 to 63 hours per week.

36.    Each pay period spans from Thursday through Wednesday.

37.    The services Drivers render—namely, luxury car and ambulette transportation services throughout New York City, Long Island, and New Jersey—is an integral part of Defendants' business of providing transportation services.

38.    Drivers' relationships with Defendants are permanent insofar as they typically work exclusively for Defendants over extended periods of time.

39.     Defendants require Drivers to use vehicles, ambulettes, and other equipment provided by Defendants.

40.     Defendants dictate Drivers' rates of pay and hours worked.

41.     Defendants maintain control and oversight over the quality of Drivers' work.

42.     Drivers have no opportunity for profit or loss, as they are paid the same hourly wage irrespective of the income generated by their work or Defendants' overall profits.

43.     Drivers perform routine tasks that require little training.

44.     Drivers exercise little to no initiative, judgment, or foresight in open market competition with others to ensure their success, as they work exclusively for Defendants and for a fixed hourly wage.

45.     For example, Drivers do not independently advertise or market their services.

46.     On a similar note, Drivers do not operate their own businesses independently of Defendants.

**B.    <u>Time Shaving</u>**

47.     Throughout the statutory period, Defendants instructed drivers to call the Office at the end of each pay period to report the hours they worked.

48.     However, beginning in or around 2016, Defendants issued Drivers with time sheets titled "Driver's Pre-Trip/Post-Trip Vehicle Condition Report" (the "Reports") to track, *inter alia*, the number of hours Drivers work each week, the number of miles Drivers travel, and whether Defendants' vehicles incurred any defects.

49.     Defendants instructed Drivers to submit the Reports at the end of each pay period to track the number of hours Drivers work and the condition of Defendants' vehicles.

50.    Defendants also instructed Drivers to collect and bring the physical copies of their Reports to the Office approximately every three or four months when Drivers' vehicles were due for maintenance and/or inspection.

51.    Beginning in or around 2019, Defendants also instructed Drivers to email the Office at info@sinaivanservice.com at the end of each pay period to report their hours, in addition to submitting the Reports.

52.    When Drivers arrive to the location of their first assignment each morning, they clock in by writing their arrival times on the Reports.

53.    At the end of their shifts, Drivers clock out by writing the time that they dropped off their last customer on the Reports before driving Defendants' vehicles home.

54.    In the event a Driver fails to write down their clock in or clock out times, Defendants simply pull the relevant information from software installed in each vehicle, which tracks the precise time Drivers pick up their first customer and drop off their last customer.

55.    Indeed, Defendants outfit each vehicle with software that tracks the exact time Drivers pick up their first customer at the beginning of each of their shifts and the time they drop off their last customer at the completion of their shifts.

56.    The software also tracks, *inter alia*, the location of each vehicle and the speed at which Drivers are driving at any given time.

57.    The vehicle's software then exports this information to Defendants' Office.

58.    As such, based on receiving phone calls, emails, and/or the Reports from Drivers each week, as well as actively tracking the precise hours worked by Drivers through the software Defendants install in each vehicle, Defendants are aware of the number of hours Drivers work each day and week.

59.     However, as detailed below, Defendants routinely fail to compensate Drivers for all hours worked—only paying for a portion of the time Drivers spend driving Defendants' customers.

60.     Indeed, Defendants routinely shave approximately 15 minutes to seven hours *every week* from Drivers' work times.

## C.     Failure to Tender Minimum and Overtime Wages, Payment for All Hours Worked, and Spread of Hours Pay

61.     Defendants engage in a common pattern and practice of deliberately denying Drivers their minimum and overtime wages.

62.     First, Defendants engage in a common pattern and practice of deliberately reducing Drivers' hours worked, such that Drivers are paid for fewer hours than they spend driving during their shifts, report to Defendants' Office, and/or log in the Reports.

63.     Indeed, at the end of each pay period, Defendants give Drivers pay records supposedly reflecting the total number of hours each Driver worked during the preceding pay period, along with their earned wages for working those hours.

64.     However, the pay records do not accurately reflect the actual number of hours that Drivers work.

65.     As discussed *supra*, Defendants routinely reduce Drivers' working hours by anywhere from 15 minutes to seven hours *each week*.

66.     These hours that Defendants unlawfully cut should be paid to Drivers at the applicable State-minimum wage rate or at a rate of one and one-half times their regular rates of pay or the minimum wage rate for hours that exceeded 40 in a workweek.

67.     Lastly, Defendants never provided Drivers with "spread of hours" pay—*i.e.*, an additional hour of pay at the applicable State minimum wage rate on each day where the length of

interval between the beginning and end of an employees' workday exceeds 10 hours.

**D.    Unlawful Deductions for Parking and Traffic Violations**

68.    Defendants also have acted willfully and deliberately in maintaining an intentional practice of improperly deducting wages from Drivers.

69.    Specifically, Defendants deduct Drivers' wages to cover some or all of the costs associated with parking and traffic violations for which Drivers are issued tickets while operating Defendants' vehicles during working hours and for work purposes.

70.    Defendants either deduct a portion or the entire amount of the parking or traffic violations from Drivers' wages.

71.    These deductions from Drivers' wages for expenses incurred by Drivers, in carrying out duties assigned by Defendants, are unlawful.

**E.    Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

72.    The NYLL requires that Defendants provide Drivers, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

73.    Throughout the statutory period, Defendants have never provided any of the Drivers with a Notice of Pay Rate.

74.    The NYLL also requires that Defendants furnish Drivers with accurate wage

statements with each payment of wages.

75.     Throughout the statutory period, Defendants have never furnished accurate wage statements to any of the Drivers.

76.     As a result of Defendants' failure to provide Drivers with Notices of Pay Rate and accurate wage statements with each payment of wages, Plaintiff and other Drivers have suffered concrete harm.

77.     Specifically, Plaintiff and other Drivers have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that Defendants underpaid them; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

78.     Defendants' failure to provide Plaintiff and other Drivers Notices of Pay Rate and accurate wage statements not only hindered Plaintiff and other Drivers from realizing their rights at the time of payment, but also injured Plaintiff and other Drivers by enabling the actual underpayment of their wages, necessitating this action.

**F.     Plaintiff Pavel Stetsko**

**i.     Background**

79.     Stetsko worked for Defendants as an ambulette driver from in or around May 2011 through on or around March 6, 2025.

80.     In this role, Stetsko was responsible for, *inter alia*, driving Defendants' vehicles to pick up and transport elderly and/or infirm individuals to schools and/or medical facilities such as hospitals or medical offices throughout New York City and Long Island.

81.     Each morning, Stetsko received the location of Defendants' first customer, and he drove Defendants' company-issued ambulette to pick up that individual.

82.     After Stetsko dropped off the customer at their destination, he proceeded to the

location of Defendants' next customer until his shift ended.

83.     For each shift, Stetsko reported the time he arrived at the location of his first customer on the Reports issued by Defendants.

84.     Before driving the Defendants' ambulette back home, Stetsko also reported the time he dropped off his last customer on the Reports.

85.     At the end of each pay period, Stetsko submitted the Reports to Defendants and/or emailed Defendants notifying them of, *inter alia*, the number of his assigned vehicle, the days he worked that week, the time his shift started and ended each day, and the total number of hours he worked that week.

86.     Defendants could also confirm the start and end times of each of Stetsko's shifts through the tracking software installed in the ambulette(s) Defendants assigned him.

87.     Defendants could further confirm the hours Stetsko worked each week by reviewing the physical copies of the Reports Stetsko submitted every three to four months when Defendants instructed to him to bring the company-issued vehicle to the Office for maintenance and/or inspection.

88.     In 2019, Defendants set Stetsko's regular rate of pay at $15.00 per hour, with his overtime rate being $22.50 per hour.

89.     Beginning in or around January 2020 through on or around August 9, 2023, Defendants set Stetsko's regular rate of pay at $16.00 per hour, with his overtime rate being $24.00 per hour.

90.     Beginning on or around August 10, 2023 through on or around July 10, 2024, Defendants set Stetsko's regular rate of pay at $18.00 per hour, with his overtime rate being $27.00 per hour.

91.    Beginning on or around July 11, 2024 through on or around March 6, 2025, Defendants set Stetsko's regular rate of pay at $19.00 per hour, with his overtime rate being $28.50 per hour.

92.    At all times, Stetsko agreed to be paid at these rates.

93.    From in or around June 2019 through in or around February 2020, Defendants typically scheduled Stetsko to work five to six days per week, from between approximately 8:00 a.m. and 9:00 a.m. to between approximately 5:00 p.m. and 6:30 p.m.

94.    During this time, Stetsko consistently worked approximately 40 to 59.25 hours per week, without a meal break.

95.    From in or around March 2020 through in or around early-November 2020, Defendants reduced the number of days Stetsko worked to five days per week because of COVID-19, and Stetsko worked from approximately 8:45 a.m. or 9:00 a.m. to between approximately 3:00 p.m. and 5:00 p.m.

96.    During this time, Stetsko consistently worked approximately 25.5 to 41 hours per week, without a meal break.

97.    From in or around November 2020 through on or around March 6, 2025, Defendants typically scheduled Stetsko to work five days per week, from approximately 8:00 a.m. to between approximately 4:30 p.m. and 5:30 p.m.

98.    During this time, Stetsko consistently worked approximately 40 to 47.5 hours per week, without a meal break.

99.    Stetsko's relationship with Defendants was permanent insofar as he worked exclusively for Defendants throughout his employment.

100.    Defendants required Stetsko to use a company-issued vehicle and other equipment

provided by Defendants.

101.    Defendants dictated Stetsko's rates of pay and hours worked.

102.    Defendants maintained control and oversight over the quality of Stetsko's work.

103.    While employed by Defendants, Stetsko had no opportunity for profit or loss, as Defendants paid him the same hourly wage irrespective of the income generated by his work or Defendants' overall profits.

104.    Stetsko performed routine tasks that required little training.

105.    Stetsko exercised little to no initiative, judgment, or foresight in open market competition with others to ensure his success, as he worked exclusively for Defendants at a fixed hourly wage.

106.    For example, Stetsko did not independently advertise or market his services.

107.    On a similar note, Stetsko did not operate his own business independently of Defendants.

**ii.    Wage Violations**

108.    Despite routinely working five to six days per week for approximately 25.5 to 59.25 hours each week, at all relevant times, Defendants failed to pay Stetsko for all of his hours worked as a result of Defendants' common policy and practice of time shaving.

109.    Indeed, Defendants failed to pay Stetsko at his established regular rates or one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek for approximately 15 minutes to four hours *every week during the statutory period*.

110.    By way of example, from on or around November 3, 2022 through on or around November 9, 2022, Stetsko worked approximately 43.25 hours.

111.    However, Defendants only paid Stetsko $646.00 for only 40.25 hours worked and

did not pay him **anything at all** for the three additional hours of overtime he worked during this workweek.

112.    For this week alone, Defendants should have paid Stetsko an additional $72.00 in overtime wages.[1]

113.    Unfortunately, Defendants' unlawful pay practices were not isolated to this week alone.

114.    By way of further example, from on or around February 29, 2024 through on or around March 6, 2024, Stetsko worked approximately 32.50 hours.

115.    However, Defendants only paid Stetsko $720.00 for 32 hours worked and did not pay him anything at all for the additional 30 minutes he worked during this workweek.

116.    For this week alone, Defendants should have paid Stetsko an additional $9.00 in unpaid wages.[2]

117.    Defendants also failed to pay Stetsko spread of hours pay for shifts he worked that were longer than 10 hours.

118.    By way of example, from on or around September 19, 2019 through on or around September 25, 2019, Stetsko worked one 9.75-hour shift, one 10-hour shift, one 10.25-hour shift, one 10.50 hour shift, and one 10.75 hour shift for a total of 51.25 hours that week.

119.    However, Defendants never paid Stetsko an additional $45.00 in spread of hours pay[3] for the three shifts he worked that week that exceeded 10 hours.

120.    Further, on several occasions, Defendants deducted portions of Stetsko's paycheck

---

[1] 43.25 hours – 40.25 hours = 3 hours; 3 hours x $24.00 (Stetsko's overtime rate) = $72.00 in unpaid overtime wages.

[2] $18.00 (Stetsko's hourly rate) x .5 hours = $9.00 in unpaid wages.

[3] 3 hours x $15.00 (minimum wage) = $45.00.

citing parking and traffic tickets Stetsko incurred while driving his company-issued ambulette during working hours and for work purposes.

121.    By way of example, during the pay period covering February 27, 2025 through March 5, 2025, Stetsko incurred a parking ticket in the amount of $100.00, which Defendants deducted from Stetsko's paycheck issued for that pay period.

122.    Additionally, Defendants failed to furnish Stetsko with accurate wage statements showing all of his hours worked.

123.    Defendants also failed to issue a Notice of Pay Rate to Stetsko at any time during his employment, let alone each time Defendants set or changed his rate of pay.

124.    As a result of Defendants' failure to provide Stetsko with a Notice of Pay Rate or accurate wage statements with each payment of his wages, Defendants prevented Stetsko from, *inter alia*: (i) realizing his true hours worked; (ii) realizing Defendants underpaid him; and (iii) taking appropriate action to obtain the payments due to him.

125.    Throughout the relevant period, Stetsko had conversations with other Drivers, including a Driver named Vladimir, who confirmed that Defendants denied them compensation for all hours worked, overtime wages, and spread of hours pay, and improperly deducted parking and traffic violations from their wages.

126.    Like Stetsko, Defendants issued these Drivers inaccurate wage statements that inaccurately reflected their hours worked.

127.    These employees also confirmed that Defendants failed to provide them with Notices of Pay Rate.

### iii.     Retaliation

128.     On or around March 6, 2025, Stetsko complained to Portnov regarding Defendants' unlawful practice of failing to provide him and other Drivers with a meal break.

129.     Pursuant to the NYLL, employees are entitled to a 30-minute meal break between 11:00 a.m. and 2:00 p.m. for shifts lasting six hours or longer that extend over that period.

130.     Defendants failed to provide Stetsko (and other Drivers) with meal breaks when he worked shifts lasting six hours or longer that started before 11:00 a.m. and ended past 2:00 p.m.

131.     Immediately following Stetsko's complaint, Portnov told Stetsko "if you want to eat, go home and eat," and terminated Stetsko's employment, in retaliation for his protected activity.

## FLSA COLLECTIVE ACTION ALLEGATIONS

132.     Plaintiff brings this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

133.     Plaintiff seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of himself and all other Drivers who Defendants employed at any time during the full statute of limitations period (the "FLSA Collective").

134.     At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of unlawfully reducing compensable on-the-clock working hours, including for straight time and overtime hours worked.

135.     Indeed, Plaintiff and the FLSA Collective were subject to Defendants' practices of: (i) failing to compensate them at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing to compensate Plaintiff and the FLSA

Collective at the federal minimum wage for all hours worked in a workweek.

136.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

137.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

138.    As a result of Defendants' conduct, they are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

139.    While the exact number of the FLSA Collective is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 150 other similarly situated Drivers who were employed by Defendants during the full statute of limitations period.

140.    Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

141.    Accordingly, Defendants should be required to provide Plaintiff with a list of all Drivers employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

142.     Plaintiff brings this action, in part, as a class action under the NYLL and applicable regulations thereunder.

**A.     Class Definition**

143.     Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Drivers who Defendants employed at any time during the full statute of limitations period (the "NYLL Class").

144.     Plaintiff alleges, on behalf of himself and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay Plaintiff and the NYLL Class at or above the applicable State minimum wage rate for all hours worked; (ii) failing to compensate Plaintiff and the NYLL Class at one and one-half times their regular rate of pay (or the applicable State minimum wage rate) for all hours worked in excess of 40 hours in a workweek; (iii) failing to pay Plaintiff and the NYLL Class all wages owed in accordance with their agreed terms of employment; (iv) failing to compensate Plaintiff, and the NYLL Class spread of hours pay for shifts in excess of 10 hours in a day; (v) making improper deductions from wages owed to Plaintiff and the NYLL Class; (vi) failing to provide Notices of Pay Rate; and (vii) failing to furnish accurate wage statements.

145.     Plaintiff has standing to seek such relief on behalf of the NYLL Class because Defendants' unlawful practices have adversely affected them individually and as a group.

146.     The unlawful practices described herein are part of Defendants' normal course of conduct.

147.     The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.**    **Numerosity and Impracticability of Joinder**

148.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

149.    While the exact number of the members of the NYLL Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 300 members of the NYLL Class.

150.    Therefore, the numerosity requirement of FRCP 23(a)(1) is satisfied.

**C.**    **Common Questions of Law and Fact**

151.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class.

152.    These common questions predominate over any questions only affecting the members of the NYLL Class individually.

153.    Indeed, there are few, if any, purely individual issues in this action.

154.    The questions of law and fact that are common to Plaintiff and the NYLL Class include, without limitation:

(a)    Whether Defendants failed to pay Plaintiff and the NYLL at or above the applicable State minimum wage rate for all hours worked;

(b)    Whether Defendants failed to pay Plaintiff and the NYLL Class the overtime rate for all hours worked in excess of 40 in a workweek;

(c)    Whether Defendants failed pay Plaintiff and the NYLL Class all wages owed in accordance with their agreed terms of employment;

(d)    Whether Defendants failed to compensate Plaintiff and the NYLL Class with spread of hours pay or an additional hour of pay at the applicable State minimum wage rate

on each day where the length of interval between the beginning and end of workday exceeded 10 hours;

(e)    Whether Defendants made improper deductions from wages owed to Plaintiff and the NYLL Class;

(f)    Whether Defendants failed to provide Plaintiff and the NYLL Class with Notices of Pay Rate;

(g)    Whether Defendants failed to furnish accurate wage statements to Plaintiff and the NYLL Class; and

(h)    Whether Plaintiff and the NYLL Class are entitled to liquidated damages and injunctive relief.

155.    Therefore, the common question requirement of FRCP 23(a)(2) is satisfied.

**D.    <u>Typicality of Claims and Relief Sought</u>**

156.    Plaintiff's claims are typical of the claims of the members of the NYLL Class he seeks to represent.

157.    Plaintiff and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

158.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Drivers generally, and of the NYLL Class specifically.

159.    Therefore, the typicality requirement of FRCP 23(a)(3) is satisfied.

**E.    <u>Adequacy of Representation</u>**

160.    Plaintiff will fairly and adequately protect the interests of the NYLL Class because his interests are coextensive and aligned with those of the members of the NYLL Class.

161. Plaintiff has no interests adverse to the NYLL Class he seeks to represent.

162. Plaintiff is willing and able to represent the NYLL Class as fairly and vigorously as he pursues his similar individual claims.

163. Plaintiff has retained counsel who are competent, qualified, and experienced in employment class action litigation.

164. Plaintiff's counsel are able to meet the demands necessary to litigate a class action of this size and complexity.

165. The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a)(4).

**F.    Requirements of Rule 23(b)(1)**

166. Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

167. Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff and the NYLL Class.

168. By filing this Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

169. Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

## G.    Requirements of Rule 23(b)(2)

170.    Defendants acted on grounds, described herein, generally applicable to Plaintiff and the NYLL Class by denying Plaintiff and the NYLL Class all wages owed, minimum and overtime wages, spread of hours pay, making improper wage deductions, and failing to furnish Notices of Pay Rate and accurate wage statements.

171.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYLL Class as a whole.

172.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact at issue in this action.

173.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

174.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

## H.    Requirements of Rule 23(b)(3)

175.    The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

176.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and those of the NYLL Class.

177.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

178.    This class action will not be difficult to manage for reasons including, without limitation: (i) the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Drivers during the statutory period); and (ii) the common questions of law and fact described in the paragraphs above.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiff and the FLSA Collective)*

179.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

180.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

181.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay (and not less than one and one-half times the federal minimum wage rate) for all hours worked in excess of 40 hours in a workweek.

182.    Plaintiff and the FLSA Collective were not exempt from the requirement their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

183.    Throughout the full statute of limitations period, Defendants engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at the required overtime rate for time spent working in excess of 40 hours in a workweek.

184.    As a result of Defendants' failure to pay overtime compensation to Plaintiff and the FLSA Collective, Defendants have violated the FLSA and/or applicable regulations thereunder.

185.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective, in accordance with the FLSA and/or applicable regulations thereunder.

186.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE**
***(On Behalf of Plaintiff and the FLSA Collective)***

187.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

188.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

189.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

190.    Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them minimum wages under the FLSA.

191.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek.

192.    As a result of Defendants' failures to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

193.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective, in accordance with the FLSA.

194.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME
#### (*On Behalf of Plaintiff and the NYLL Class*)

195.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

196.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

197.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times the applicable State minimum wage rates for all hours worked in excess of 40 hours in a workweek.

198.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

199.    Throughout the full statute of limitations period, Defendants engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times the applicable State minimum wage rates for all hours worked in excess of 40 hours in a workweek.

200.    As a result of Defendants' failure to pay overtime compensation to Plaintiff and the NYLL Class, Defendants have violated the NYLL and/or applicable regulations thereunder.

201.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class, in accordance with the NYLL.

202.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
### *(On Behalf of Plaintiff and the NYLL Class)*

203.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

204.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

205.    The NYLL requires covered employers, including Defendants, to compensate Plaintiff and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

206.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

207.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

208.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

209.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

210.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
#### (*On Behalf of Plaintiff and the NYLL Class*)

211.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

212.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

213.    The NYLL requires covered employers, including Defendants, to compensate Drivers at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 hours in a workweek.

214.    Plaintiff and the NYLL Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek, during the full statute of limitations period.

215.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the NYLL Class at their established regular rates of pay for all hours worked under 40 in a workweek.

216.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the NYLL Class at their established regular rates of pay for all hours worked in excess of 40 in a workweek.

217.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

218.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

219.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: SPREAD OF HOURS PAY
#### *(On Behalf of Plaintiff and the NYLL Class)*

220.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

221.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well all applicable regulations

thereunder, including, without limitation, the Hospitality Industry Wage Order, 12 N.Y.C.R.R. §§ 146-1.1, *et seq.*

222.    The NYLL and/or applicable regulations thereunder require employers, including Defendants, to furnish each of their employees one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's workday, or "spread of hours," exceeds 10 hours.

223.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with spread of hours pay.

224.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide spread of hours pay to Plaintiff and the NYLL Class.

225.    As a result of Defendants' failure to furnish spread of hours pay to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, the NYLL and/or applicable regulations thereunder.

226.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: UNLAWFUL DEDUCTIONS**
**(*On Behalf of Plaintiff and the NYLL Class*)**

227.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

228.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations

thereunder.

229.    The NYLL and/or applicable regulations thereunder prohibit employers, including Defendants, from making deductions from Plaintiff's and the NYLL Class's wages.

230.    Plaintiff and the NYLL Class were not exempt from the requirement that their employer not make unlawful deductions from their wages.

231.    By the actions described above, Defendants made unlawful deductions from Plaintiff's and the NYLL Class's wages.

232.    As a result of Defendants' unlawful deductions from Plaintiff's and the NYLL Class's wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

233.    Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

234.    As a result of Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover damages to the greatest extent permitted under the law.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
**(*On Behalf of Plaintiff and the NYLL Class*)**

235.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

236.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

237.    The NYLL requires covered employers, including Defendants, to provide Drivers, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging

allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate. NYLL § 195(1)(a).

238.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

239.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the NYLL Class.

240.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

241.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the NYLL Class in accordance with the NYLL.

242.    Further, due to Defendants' failure to provide Notices of Pay Rate, Plaintiff and the NYLL Class have suffered concrete harm.

243.    Specifically, Defendants prevented Plaintiff and the NYLL Class from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that Defendants underpaid them; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

244.    Defendants' failure to provide Plaintiff and the NYLL Class with Notices of Pay Rate not only hindered Plaintiff and the NYLL Class from realizing their rights at the time of payment, but also injured them by enabling the underpayment of their wages, necessitating this

action.

245.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $50.00 for each workday the violation occurred, not to exceed $5,000.00, plus attorneys' fees and costs.

### NINTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: ACCURATE WAGE STATEMENTS
#### (*On Behalf of Plaintiff and the NYLL Class*)

246.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

247.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

248.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."  NYLL § 195(3).

249.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with accurate wage statements.

250.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiff and the NYLL Class.

251.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

252.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish accurate wage statements to Plaintiff and the NYLL Class in accordance with the NYLL.

253.    Further, due to Defendants' failure to provide accurate wage statements, Plaintiff and the NYLL Class have suffered concrete harm.

254.    Specifically, Defendants prevented Plaintiff and the NYLL Class from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that Defendants underpaid them; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

255.    Defendants' failure to provide Plaintiff and the NYLL Class with accurate wage statements not only hindered Plaintiff and the NYLL Class from realizing their rights at the time of payment, but also injured them by enabling the underpayment of their wages, necessitating this action.

256.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250.00 for each workday the violation occurred, not to exceed $5,000.00, plus attorneys' fees and costs.

### TENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: RETALIATION
*(On Behalf of Plaintiff Stetsko Individually)*

257.    Stetsko hereby repeats and realleges the foregoing allegations as if set forth fully herein.

258.    During the full statutory period, Stetsko was protected by the provisions of the

NYLL, N.Y. Lab. Law §§ 215, *et seq.*, as well as all applicable regulations thereunder.

259.    As set forth above, Stetsko complained to Defendants regarding Defendants' violation of the NYLL.

260.    Defendants retaliated against Stetsko for his protected activity by terminating his employment.

261.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Stetsko has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

262.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Stetsko has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

263.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Stetsko's rights under the NYLL, for which Stetsko is entitled to an award of punitive damages.

264.    Stetsko is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to

29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiff as the representative of the FLSA Collective, and his counsel of record, Faruqi & Faruqi, LLP, as counsel for the FLSA Collective;

F.      Designate Plaintiff as the representative of the NYLL Class, and his counsel of record, Faruqi & Faruqi, LLP, as class counsel;

G.      Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre- and post-judgment interest as may be allowed by law;

H.      Determine the damages sustained by Plaintiff and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiff and the NYLL Class, plus such pre- and post-judgment interest as may be allowed by law;

I.      Award Plaintiff, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages;

J.    Award Plaintiff all appropriate relief pursuant to his individual retaliation claim under the NYLL;

K.    Award Plaintiff, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

L.    Grant such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, hereby demands a trial by jury on all issues of fact and damages.

Dated: June 9, 2025          **FARUQI & FARUQI, LLP**
New York, New York

By: */s/ Innessa M. Huot*
    Innessa M. Huot
    Camilo M. Burr
    Brian E. Nettle

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
cburr@faruqilaw.com
bnettle@faruqilaw.com

*Attorneys for Plaintiff, the*
*Proposed FLSA Collective, and*
*the Proposed NYLL Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAVEL STETSKO, on behalf of himself and others similarly situated, | Case No.: |
| Plaintiff, | **CONSENT TO SUE** |
| v. | |
| SINAI I INC. d/b/a SINAI VAN SERVICE and YEFIM PORTNOV, in his individual and professional capacity, | |
| Defendants. | |

I, Pavel Stetsko, was employed by Defendants within the last three years and am the Named Plaintiff in the above-captioned action, *Stetsko v. Sinai I Inc. d/b/a Sinai Van Service, et al.*, pending in the United States Court for the Eastern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, New York 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Pavel Stetsko

Signature: *Pavel Stetsko*
Pavel Stetsko (Jun 6, 2025 19:01 EDT)

Date: 06/06/2025